A02A0535. GEARIN v. THE STATE.
(565 SE2d 540)

MIKELL, Judge.
A Barrow County jury convicted Donald Memory Gearin of aggravated child molestation, aggravated sexual battery, two counts

---

of child molestation, and first degree cruelty to children. Gearin was sentenced to twenty years, ten of which he was ordered to serve in confinement, with the remainder on probation. On appeal, Gearin argues that the evidence was insufficient to support his conviction on each offense and that venue was improper in Barrow County. We affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[1] Furthermore, "an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[2]

Construed in favor of the verdict, the evidence shows that the victim, D. G., was five years old at the time of the incident. D. G. testified that when she last saw her grandfather, the defendant, they were in the back of his van, and Gearin pulled her dress up, got on top of her, and touched her bottom with his hands. There was evidence that D. G. called both her vagina and rear end her bottom because she had not yet been explained the difference between the two. D. G. testified that it hurt when he touched her and that she was screaming, hollering, and kicking.

On cross-examination, in answering "yes" to questions posed by defense counsel, D. G. also testified that she was playing in the back of Gearin's van; that he told her to come to the front seat so that she would not get hurt; that when she did not come to the front seat, he grabbed her arm and leg and picked her up by the bottom and fell out of his seat toward her; that that is when she got hurt; that Gearin used a rag to wipe blood from her leg; and that she told him he hurt her and he apologized. Also, D. G. testified that because of previous accidents and injuries, she was scared to tell her mother that this was an accident because she did not want to disappoint her or get her into trouble.

April Gearin, D. G.'s mother, testified that on March 6, 1995, Gearin stopped by and asked if D. G. could ride with him to pick up a seat from a car repair shop. April told Gearin that D. G. could go but told D. G., who was wearing a bathing suit at the time, to change clothes. D. G. changed into a white dress with pink flowers on it. D. G. and Gearin were gone for approximately 30 minutes, and when D. G. returned, she exited Gearin's van and walked directly into the house. April noticed that D. G.'s dress was dirty. Gearin explained that D. G.'s dress was dirty because she had been running around in

[1] (Citations and punctuation omitted.) *Hutchinson v. State*, 232 Ga. App. 368, 369 (501 SE2d 873) (1998).

[2] (Citations and punctuation omitted.) *Jones v. State*, 234 Ga. App. 571 (1) (507 SE2d 804) (1998).

his van. Gearin mentioned nothing about D. G. injuring herself while in his van.

After Gearin left, April testified that she noticed that D. G. was acting like something was wrong. When April asked if anything was wrong, D. G. said no. When April inquired again, D. G. asked if she would get into trouble, which alarmed April. April then told D. G., "No, you won't get into trouble, [D. G.] If something is wrong, you need to tell me," and D. G. replied, "there ain't nothing wrong." They went back outside and sat on the porch, where April noticed blood in the crotch of D. G.'s bathing suit. April also saw blood on the porch and on the kitchen floor. When April questioned D. G. again, D. G. said there was glass and that Gearin, whom D. G. called "Poppa," touched her down there and she pointed to her vagina. April called D. G.'s doctor and was told to take D. G. to the hospital, which she did.

Nurse June Hawkins, who prepared D. G. for her examination at the hospital, testified that when she helped D. G. to undress, she saw that D. G.'s panties were full of blood in the crotch. Dr. Carry Perry, who examined D. G., testified that she asked D. G. if various body parts hurt. The only body part that D. G. indicated was hurt was her bottom. Dr. Perry asked, "Did anyone touch you," and D. G. replied, "no." Dr. Perry then asked, "Well, why does your bottom hurt," and D. G. said it hurt because "Poppa touched me."

Because of her tender age, D. G. was anesthetized and examined in the operating room. Dr. Perry found a small laceration inside of D. G.'s vagina, another small laceration on the bottom of D. G.'s rectum, and light bruising around the area between the vagina and the rectum. The vaginal laceration was approximately a centimeter long and was not visible upon external examination. The rectal laceration was only visible upon Dr. Perry's separation of D. G.'s buttocks. D. G.'s hymen was not intact, but Dr. Perry testified that this finding was not unusual for a normal, active, small child and could have resulted from everyday play. Dr. Perry opined that D. G.'s wounds were not consistent with a fall or straddle injury, but could be consistent with a fingernail scratch.

Sergeant Lewis Rusgrove of the Barrow County Sheriff's Office investigated the incident. He testified that he interviewed Gearin at the sheriff's office after advising him of the subject of the interview and reading him his rights. Gearin's tape-recorded statement was played for the jury. Gearin initially stated that as he drove down the road, D. G. was playing in the back of his van. She fell, and because she began to cry, Gearin stopped on the side of the road. When he picked her up, he saw blood on her legs which he tried to wipe off. Later in the interview, Gearin stated that he may have accidentally put his finger into D. G.'s vagina when he picked her up. Eventually

Gearin admitted that he did accidentally put his finger into her vagina, but that he pulled it out immediately, and that D. G. yelled when it happened. The following colloquy occurred after Gearin's admission:

> Sergeant Rusgrove: You stopped the van on the side of the road somewhere?
> Gearin: No.
> Sergeant Rusgrove: Okay, you was [sic] driving down the road? Okay. Did you just put your hand over there?
> Gearin: I acted like a damn fool.
> Sergeant Rusgrove: Okay. Is there anything else that you want to say? Is there anything that you want me to, to tell them? You want me to tell them that your [sic] sorry?
> Gearin: Yea.

1. Gearin's convictions for aggravated child molestation, aggravated sexual battery, child molestation, and first degree cruelty to children all center upon the allegation that he inserted his finger into D. G.'s vagina. He contends that the evidence is insufficient as to each of these convictions because it does not show that he had the requisite intent nor does it disprove his theory of defense that the incident was an accident. We disagree.

Intent, which is a mental attitude, can be inferred, and the law accommodates this.[3] Furthermore,

> [a] reviewing court will not disturb a factual determination by the jury on intent unless it is contrary to the evidence and clearly erroneous. The intent with which an act is done is peculiarly a question of fact for determination by the jury and even when a finding that the accused had the intent to commit the crime charged is supported by evidence which is exceedingly weak and unsatisfactory the verdict will not be set aside on that ground.[4]

As for Gearin's argument that his contact with D. G. was an accident, the trial court charged the jury that:

> When the issue of accident is raised, the burden is on the State to negate it or disprove it beyond a reasonable doubt. Any evidence as to misfortune or accident should be considered by you in connection with all the other evidence in the

---

[3] *Ney v. State*, 227 Ga. App. 496, 497 (1) (489 SE2d 509) (1997).
[4] (Citations and punctuation omitted.) Id. at 497-498 (1).

case. If, in doing so, you should entertain a reasonable doubt as to the guilt of the accused, it would be your duty to acquit. On the other hand, should you believe from the evidence as a whole that the defendant is guilty beyond a reasonable doubt, then you may convict.

Although at one point, Gearin's statement indicated that the incident was accidental, the jury obviously chose to reject his theory and was authorized to believe the testimony of the state's witnesses and the state's version of the incident.[5] This is especially so in light of Gearin's statement that "I acted like a damn fool." From this statement, the jury could very well have inferred that the incident was not accidental. "Determinations as to the credibility of a witness are a matter solely within the jury's purview and will not be disturbed on appeal."[6]

"A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[7] Aggravated sexual battery is committed when a person intentionally penetrates with a foreign object, such as a finger, the sexual organ or anus of another person without the consent of that person.[8] A person who does any immoral or indecent act to a child under the age of 16 years with the intent to arouse or satisfy his own or the child's sexual desires commits child molestation.[9] "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."[10] As the evidence supports the finding that Gearin inserted his finger into D. G.'s vagina, causing her physical injury, we find that it was sufficient to authorize the jury's verdict as to each offense.

2. The child molestation charged in Count 5 alleged that Gearin touched D. G.'s anus. Gearin argues that there was no evidence that he touched D. G.'s anus and if he did, there was no intent on his part to do so. As we discussed in Division 1, intent can be inferred.[11] Furthermore, D. G. testified that Gearin touched her bottom, and D. G.'s mother testified that by "bottom," D. G. meant both her vagina and her rectal area. This evidence, combined with Dr. Perry's testimony

[5] See *Smith v. State*, 249 Ga. App. 736, 737 (550 SE2d 106) (2001).
[6] (Footnote omitted.) *Howard v. State*, 252 Ga. App. 465, 468 (1) (556 SE2d 536) (2001).
[7] OCGA § 16-6-4 (c).
[8] OCGA § 16-6-22.2 (b); *Hardeman v. State*, 247 Ga. App. 503 (544 SE2d 481) (2001).
[9] OCGA § 16-6-4 (a).
[10] OCGA § 16-5-70 (b).
[11] *Ney*, supra.

regarding the extent of D. G.'s injuries, authorized the jury to convict Gearin on this count as well.[12]

3. Lastly, Gearin argues that the trial court erred by denying his motion for directed verdict on the ground that venue had not been proven beyond a reasonable doubt. We disagree.

Generally, "[c]riminal actions shall be tried in the county where the crime was committed."[13] However, where a crime is committed upon a vehicle traveling within this state and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the vehicle traveled.[14] In his statement, Gearin indicated that he traveled from D. G.'s house to a garage owned by Mike Roberts and then back to D. G.'s house. April testified that the routes between her home and Roberts' repair shop were in Barrow County. Sergeant Rusgrove testified that the routes of travel that Gearin told him he took were located in Barrow County. Therefore, even if the actual offense occurred outside of the county, the evidence is undisputed that Gearin drove in Barrow County on March 6, 1995, with D. G. in his vehicle. This enumeration is meritless.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MAY 10, 2002.

*Kevin R. Christopher*, for appellant.
*Timothy G. Madison, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

---

[12] See also *Hurst v. State*, 198 Ga. App. 380, 381 (3) (401 SE2d 348) (1991) (testimony of the victims, the adults investigating the disclosure of molestation, and the expert regarding physical manifestations of the incident was sufficient to authorize child molestation convictions).

